IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

O CENTRO ESPIRITA BENEFICIENTE
UNIAO DO VEGETAL, et al.,

    Plaintiffs,

v.                 CIV. No. 00-1647 JP/RLP

MICHAEL B MUKASEY, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## DEFENDANTS' MOTION TO DISMISS

  This case involves an ongoing dispute between O Centro Espirita Beneficiente Uniao Do Vegetal (UDV), a Christian religious sect, and the federal government, regarding the applicability of the Controlled Substances Act (CSA) to UDV's sacramental use of hoasca tea. A Preliminary Injunction currently permits Plaintiffs to import the substances used to brew the tea and prescribes certain conditions for use. (Doc. No. 100.) Plaintiffs filed an eight-count amended complaint on September 21, 2007 (Doc. No. 159). Defendants filed a Motion to Dismiss the amended complaint on November 21, 2007 (Doc. No. 166).

  Due to the complexity of the issues involved and the extensiveness of the briefing, the Court will address only part of Defendants' Motion to Dismiss in this Memorandum Order and Opinion. The Court concludes that Defendants' Motion to Dismiss should be granted as to Plaintiffs' free exercise, equal protection, and international law claims (Counts 6–8, respectively).

## I. Free Exercise Clause (Count 6)

In Count 6, Plaintiffs allege that "the CSA and its regulatory scheme, which are neither neutral nor generally applicable, substantially burden Plaintiffs' exercise of religion without justification in violation of the First Amendment." (First Am. Compl. ¶¶ 133–44). In an order entered August 12, 2002 ("August 2002 Order") (published at 282 F. Supp. 2d 1236 (D.N.M. 2002)), the Court concluded that the CSA is neutral and generally applicable, under the test set out in *Employment Division v. Smith*, 494 U.S. 872 (1990), and therefore does not violate Plaintiffs' First Amendment free exercise rights. Although the August 2002 Order was entered in response to Plaintiffs' motion for a preliminary injunction, the Court in fact ruled on the merits, stating: "given the breadth of the parties' briefing in this case, and the extensiveness of the arguments and evidence presented at the hearing, it seems appropriate to consider the substance of the Plaintiffs' claims at this time." 282 F. Supp. 2d at 1241.

Plaintiffs' original and amended free exercise claims are substantially identical. Both allege that the CSA is not neutral under *Smith* because it contains exemptions for the Native American Church's use of peyote and for various medical and research uses. (*Compare* Original Compl. (Doc. No. 1) ¶¶ 58–60 *with* First Am. Compl. (Doc. No. 159) ¶¶ 136–38.) In the August 2002 Order, the Court's analysis of the CSA's neutrality and general applicability focused on the exemptions for certain secular uses. 282 F. Supp. 2d at 1242–44. Now, Plaintiffs' briefing in opposition to Defendants' motion to dismiss emphasizes the exemption for the Native American Church (NAC) and alleges that this exemption violates the First Amendment principle of denominational neutrality. (Pls.' Opposition to Defs.' Motion to Dismiss at 48–51.) Because the August 2002 Order did not specifically address the question of the CSA's neutrality as among

2

religions, rather than as between religious and nonreligious uses, the Court finds that it is appropriate to supplement its earlier legal conclusions.[1] The Court concludes that the CSA is "neutral" for the purposes of *Smith* despite the accommodation made for the NAC.

In *Smith*, the Supreme Court held that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." 494 U.S. at 879 (citation omitted). In *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993), the Supreme Court provided guidance on the meaning of the term "neutral" for the purposes of the *Smith* test. The *Hialeah* Court held that a law is non-neutral only if "the object or purpose of [that] law is the suppression of religion or religious conduct." *Id.* at 533.

Plaintiffs argue that a law can also be non-neutral if it accommodates one religion, but not another. The interpretation of "neutrality" that Plaintiffs advocate is more expansive than the definition adopted by the Supreme Court in *Hialeah* and applied by numerous circuit courts of appeals. *See, e.g., Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649–50 (10th Cir. 2006) ("A law is neutral so long as its object is something other than the infringement or restriction of religious practices."); *United States v. Indianapolis Baptist Temple*, 224 F.3d 627, 629 (7th Cir. 2000) ("[T]here is no indication that [the federal employment tax laws] were enacted for the purpose of burdening religious practices."); *KDM ex rel. WJM v. Reedsport Sch. Dist.*, 196 F.3d 1046, 1050 (9th Cir. 1999) (finding a law neutral because "as applied here it does

---

[1] Plaintiffs do not introduce any new arguments that the CSA is not "generally applicable," so the Court does not address that aspect of the *Smith* analysis in this Memorandum Opinion and Order.

not have the object or purpose of suppression of religion or religious conduct") (internal quotation marks and alterations omitted); *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 405 (6th Cir. 1999) ("A law is not neutral if the object of the law, whether overt or hidden, is to infringe upon or restrict practices because of their religious motivation."); *Peyote Way Church of God v. Thornburgh*, 922 F.2d 1210, 1213 (5th Cir. 1991) ("The *Smith* majority held that Oregon's statute criminalizing peyote possession withstands challenge under the free exercise clause because it . . . does not have as its purpose the proscription of religious conduct.").

The text of the First Amendment supports interpreting "neutral" in the free exercise context to be concerned only with *burdens* that a law places on religious practice. The Free Exercise Clause bars Congress from enacting a law that *prohibits* the free exercise of religion. U.S. Const. am. 1. In contrast, the Establishment Clause restricts the adoption of laws "respecting" an establishment of religion, a word that is broad enough to encompass both burdens on and benefits to religion. The juxtaposition of "respecting" with the more specific word "prohibit" illustrates that the Free Exercise Clause, and the legal tests that apply it, should be interpreted to pertain only to laws that burden religious practice. An accommodation for one religion might raise Establishment Clause concerns, but it does not burden any other religion in absolute terms.

Plaintiffs cite to numerous Supreme Court cases that appear to support the proposition that the First Amendment absolutely prohibits denominational preferences. In particular, Plaintiffs cite *Larson v. Valente*, 456 U.S. 228 (1982), in which the Supreme Court invalidated a state charitable solicitations statute that imposed registration and reporting requirements on

4

solicitation by certain religious organizations. The Supreme Court commented that the "constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause," *id.* at 245, but actually decided the case on Establishment Clause grounds. *Id.* at 255. Other cases that state the interreligious neutrality principle were also, in the end, decided under the Establishment Clause. *See, e.g.,Comm. for Publ. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 791 (1973) ("A proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion, favoring neither one religion over others nor religious adherents collectively over nonadherents."); *Epperson v. Ark.*, 393 U.S. 97, 104 (1968) ("The First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion."). The two religion clauses protect against distinct types of "governmental encroachment upon religious freedom," *Engel v. Vitale*, 370 U.S. 421, 430 (1962). Complaints about governmental favoritism of one religious group are properly brought under the Establishment Clause, not the Free Exercise Clause.[2]

It is true that, in a technical sense, the CSA is not neutral between religions because of the NAC exemption. This is not the sense of "neutral" recognized by the courts, however. Under current doctrine, a "law is neutral so long as its object is something other than the infringement or restriction of religious practices." *Grace United Methodist Church*, 451 F.3d at 649–50. The

---

[2] The Court acknowledges that Plaintiffs attempted to amend their complaint to add an Establishment Clause claim based on the NAC's accommodation, and that the Court denied leave to amend on the ground that the amendment would be futile. (*See* Order Denying Leave to Amend Complaint, (Doc. No. 185)). However, this circumstance does not affect the Court's conclusion that a free exercise claim cannot be based on the absence of "denominational neutrality" alone, without some showing that the law aims to suppress a religious practice.

5

object or purpose of the NAC exemption is to enable members of federally recognized tribes to engage in their traditional religious practice of ingesting peyote. The object or purpose of that exemption is not to prohibit the religious practices of any other group, such as UDV. In general terms, the presence of an accommodation for one religion in the CSA does not transform that law into one with the object of suppressing religions without such an accommodation.

There is no evidence in the text or legislative history of the CSA that the law was enacted with any overt or hidden purpose of suppressing religious use of controlled substances in general, or specifically by the UDV.[3] Plaintiffs do not even allege this. Therefore, the Court concludes that Defendants' motion to dismiss should be granted as to Plaintiffs' free exercise claim (Count 6).

## II. Equal Protection Clause (Count 7)

Plaintiffs' seventh count alleges that "[a]pplication of the CSA's regulatory scheme to Plaintiffs violates their constitutional right to equal protection of the law." (First Am. Compl. ¶¶ 145–54.) As with the free exercise claim, Plaintiffs focus on the regulatory exemption granted to the NAC.

In regard to Plaintiffs' earlier motion for a preliminary injunction, the Court considered virtually the same claim. (*See* Doc. No. 1 ¶¶ 64–65.) The Court resolved the claim on the merits, noting that "deliberate investigation" had already taken place. *O Centro Espirita Beneficente*

---

[3] The incidental burden on Plaintiffs' religious practice caused by the CSA may not permit a challenge based on the Free Exercise Clause, but it falls squarely within the category of claims that Congress sought to enable with the Religious Freedom Restoration Act (RFRA). *See* 42 U.S.C. § 2000bb(a)(4); (b)(1); *Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 546 U.S. 418, 424 (2006); *United States v. Hardman*, 297 F.3d 1116 (10th Cir. 2002) (en banc).

*Uniao do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1271, 1274 (D.N.M. 2002). The Court concluded that Plaintiffs were not similarly situated to the NAC because of the sui generis legal status of tribes, and therefore, that an equal protection claim did not lie. *Id.* at 1275–85. The Tenth Circuit expressed approval of this Court's equal protection holding when considering Plaintiffs' argument that equal protection provided an alternative ground upon which to affirm this Court's ruling on Plaintiffs' RFRA claim. *See O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 342 F.3d 1170, 1186 n.4 (10th Cir. 2003), *aff'd on reh'g en banc*, 389 F.3d 973 (10th Cir. 2004) (en banc).

However, Plaintiffs assert that the Supreme Court impliedly overruled this Court's equal protection holding, even though the equal protection claim was not before the high court. The Court addressed this argument in its Order Denying Leave to Amend the Complaint, entered on May 20, 2008 (Doc. No. 185). There, the Court concluded that the Supreme Court had discussed the relative status of the UDV and the NAC in a different context and that its remarks could not be interpreted to call into question the legal foundation on which this Court made its equal protection ruling.

Plaintiffs' equal protection claim does not differ from the one the Court dismissed in 2002, and there has been no intervening change in the law. Therefore, the Court concludes that Defendants' motion to dismiss Plaintiffs' equal protection claim (Count 7) should be granted.

## III. International Law

In Count 8, Plaintiffs assert that "application of the CSA's regulatory scheme to Plaintiffs violates international law." (First Am. Compl. ¶¶ 155–69.) In their response to the Defendants'

7

motion to dismiss, Plaintiffs voluntarily withdrew the international law claim on the ground that the government has abandoned its international law defense. (Pls.' Opposition at 66.)

Accordingly, the Court will dismiss Plaintiff's international law claim (Count 8) without prejudice.

**IT IS THEREFORE ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. 166) is **GRANTED** as to Plaintiffs' claim that the CSA and its regulations violate the Free Exercise Clause, and Count 6 is dismissed with prejudice.

2. Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' claim that the regulatory exemption for the NAC denies Plaintiffs the equal protection of the law, and Count 7 is dismissed with prejudice.

3. Plaintiffs' international law claim (Count 8) is dismissed without prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE